FRED R. AMSLER, JR. AND ILENE A. AMSLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Amsler v. Commissioner
Docket No. 4251-90
United States Tax Court
T.C. Memo 1993-289; 1993 Tax Ct. Memo LEXIS 292; 66 T.C.M. (CCH) 8; July 6, 1993, Filed *292 For respondent: Roxann T. Conrad and Patricia Anne Golembiewski. FAY
FAY
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules 180, 181 and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GOLDBERG, Special Trial Judge: This case is before the Court on a motion for partial summary judgment filed by respondent under Rule 121. Petitioners filed no response to respondent's motion, and neither petitioners nor their counsel appeared when the case was called for hearing on the motion. Following a prior hearing on two discovery motions filed by respondent, the parties filed a stipulation of facts and exhibits upon which respondent now relies, in addition to petitioners' *293 admissions, in seeking partial summary judgment. Respondent determined deficiencies in petitioners' Federal income tax, additions to tax, and additional interest as follows: Additions to Tax
Additional Interest
Sec.
Sec.
Sec.
Sec. Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
6621(c)
1982
$ 264,666
$ 13,233
[1]
$ 66,167
[2]
1983
176,757
8,838
[1]
44,189
[2]
1984
263,281
13,164
[1]
65,920
[2]
1985
55,885
2,794
[1]
13,971
[2]
Respondent's Motion For Partial Summary Judgment addresses the portions of the 1983, 1984, and 1985 deficiencies, additions to tax, and additional interest attributable to petitioners' claimed losses and investment tax credits related to an investment program promoted by Gold Depository and Loan Company, Inc. (GD&L) involving marine dry cargo containers (containers). The parties filed stipulations of settlement with respect to all other issues for each of the years. The following material facts are established by the stipulation of facts, stipulated exhibits, and admissions. Petitioners resided in Pennsylvania *294 at the time their petition was filed. They filed joint Federal income tax returns for each of the taxable years in question. GD&L promoted sales and leasing of marine dry cargo containers, offering investors the opportunity to purchase 20-foot and 40-foot containers through its program. Petitioners were introduced to the container program by Aleksandrs V. Laurins (Laurins), the managing director of a group of companies known as the Co-op Banking Group Companies which included GD&L. Based on Laurins' advice, petitioners formed a partnership, Economere Storage Services (Economere), in 1983 to invest in the GD&L container program. Each petitioner owned 50 percent of Economere. Petitioner Fred R. Amsler, Jr. (petitioner) executed a Container Purchase and Lease Agreement (the agreement) dated August 31, 1983, purportedly purchasing from GD&L 105 40-foot containers at $ 4,000 each and 315 20-foot containers at $ 2,000 each, for a total cost of $ 1,050,000. The agreement called for a cash payment of $ 52,500 and a loan of $ 997,500 for the balance of the purchase price. Petitioner paid $ 52,500 to GD&L by check, and GD&L purported to arrange financing for the balance through Co-op *295 Investment Bank, Ltd. (Co-op), a member of the Co-op Banking Group Companies. Co-op maintained a registered office in St. Vincent, West Indies, and was neither incorporated under the laws of the United States or any State of the United States, nor regulated as a banking institution by any Federal or State authority. Petitioners did not sign a note or other instrument evidencing indebtedness to GD&L, Co-op, or any other entity for the balance of the purchase price of the GD&L containers. In the agreement, GD&L was authorized to act as petitioners' nonexclusive agent for the leasing of the containers to and from U.S. ports. GD&L agreed to act in this capacity for 35 months and was to receive an annual lease management fee of 15 percent of all lease revenues generated by GD&L's leasing of the containers. In its offering materials, GD&L represented that it expected to obtain 35-month leases on the containers at a per diem rate of $ 1.00 to $ 3.00 for the 20-foot containers and $ 1.60 to $ 4.75 for the 40-foot containers. At the time the agreement with GD&L was executed, there was a world-wide slump in the container leasing industry. GD&L assigned inventory control numbers to petitioners' *296 containers. In 1984, GD&L created Equipment Owner's Registry Association (EORA) to register GD&L containers. Acting as GD&L's agent, Co-op invited petitioners to register their GD&L containers with EORA for a fee of $ 50.00. Petitioner paid the fee and received documents showing their transactions with EORA, including a Membership Certificate dated November 2, 1984, and separate Certificates of Ownership for their 20-foot and 40-foot containers dated December 8, 1984. In , we found, as we do here, that GD&L, Co-op, and EORA are related entities. Container registration is critical to the owner, lessor, lessee, and port officials, all of whom need to keep track of containers and their contents. The Official Intermodal Equipment Register-Directory of Intermodal Services in New York, New York (the Register), is a container registration service listing marine dry cargo containers worldwide by serial number. The Register shows the owner of the container and its description. The International Container Bureau (the Bureau) in Paris, France, is a container register listing containers used primarily between European *297 ports. The Bureau and the Register coordinate their registers to ensure accuracy and avoid duplication of serial numbers. Neither the Bureau nor the Register lists 20-foot and/or 40-foot containers in the name of petitioners, Economere, GD&L, Co-op, or EORA. Petitioners' containers were not registered with the Register or the Bureau by petitioners, Economere, GD&L, Co-op, or EORA, and neither of these two internationally recognized container registration agencies list containers with the serial numbers assigned by GD&L to petitioners' containers. On December 31, 1983, Co-op sent to petitioners an income and expense statement issued by GD&L showing rental income earned by the containers in 1983, reduced by interest charged on the purported note and GD&L's management fee. The balance was purportedly paid into a sinking fund. Using the income and expense statement issued by GD&L, petitioners prepared a Form 1065, U.S. Partnership Return of Income, for Economere for 1983, reflecting a loss for the partnership in the amount of $ 179,527. The parties stipulated that on Form 3468, Computation of Investment Credit, attached to its partnership return, Economere computed an investment *298 tax credit of $ 104,000 for the containers, using a basis of $ 1,040,000. [2] Petitioners' accountants did not file Economere's Form 1065 with the Internal Revenue Service. On Schedule E, Supplemental Income Schedule, attached to their 1983 tax return, petitioners reported a loss of $ 179,178 with respect to their transactions with GD&L through Economere. On Form 3468 attached to their 1983 joint tax return, petitioners computed an investment tax credit of $ 133,807. The parties stipulated that $ 104,000 of the claimed investment tax credit was attributable to petitioners' interests in Economere. Petitioners claimed an investment tax credit of $ 55,644 in 1983 and claimed carried forward credits in the amounts of $ 18,735 *299 in 1984 and $ 9,711 in 1985. On December 31, 1984, Co-op sent to petitioners an income and expense statement showing rental income earned by the containers in 1984, reduced by interest charged on the purported note and GD&L's management fee. The balance was purportedly paid into a sinking fund. Using the income and expense statement issued by GD&L, petitioners prepared a partnership return for Economere for 1984, reflecting a loss for the partnership in the amount of $ 319,445. Petitioners' accountants did not file Economere's partnership return with the Internal Revenue Service. On Schedule E attached to their 1984 tax return, petitioners reported a loss of $ 319,445 with respect to their transactions with GD&L through Economere. On December 31, 1985, Co-op sent to petitioners an income and expense statement showing rental income earned by the containers in 1985, reduced by interest charged on the purported note and GD&L's management fee. The balance was purportedly paid by a sinking fund. Using the income and expense statement issued by GD&L, petitioners prepared a partnership return for Economere for 1985, reflecting a loss for the partnership in the amount of $ 150,921. *300 Petitioners' accountant did not file Economere's partnership return with the Internal Revenue Service. On Schedule E attached to their 1985 tax return, petitioners reported a loss of $ 151,021 with respect to their transactions with GD&L through Economere. During 1983, 1984, and 1985, petitioner was an orthopedic surgeon. Other than for investment purposes, petitioner's usual business activities in 1983, 1984, and 1985, did not involve any facet of the acquisition and/or leasing of marine dry cargo containers or any other aspect of the container leasing industry. During these years, petitioner Ilene A. Amsler (Mrs. Amsler) was not employed but was involved with charitable causes. Prior to the transaction with GD&L, petitioners had not purchased or otherwise invested in marine dry cargo containers and had no experience in the container leasing industry. Petitioners relied on the promotional materials prepared by GD&L and Laurins for information about their GD&L investment, and relied on Laurins and GD&L to handle the management and operation of their container leasing activity. Petitioners had no written plan for remarketing the containers after expiration of the original 35-month *301 lease, and secured no independent insurance to cover loss or damage to the containers. Petitioners are unable to locate the income and expense statements they received for 1983, 1984, and 1985, with respect to the GD&L investment. Neither GD&L, Co-op, nor their agents and/or representatives leased containers in the name of petitioners and/or Economere. Neither petitioners nor Economere produced documents to respondent to evidence payment of any expenses claimed by petitioners on Schedule E for 1983, 1984, and 1985, with respect to the GD&L investment; these expenses being unrelated to the $ 52,500 paid by petitioners. Similarly, no documents were produced to respondent to show that the containers generated any income during 1983, 1984, and 1985. Petitioners have not produced evidence to show that the containers they purportedly purchased from GD&L in 1983 were placed in service before December 31, 1983, have ever been placed in service, or were ever available to be placed in service. Summary judgment or partial summary judgment is appropriate if the "pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, *302 if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); . The burden of proving that there is no genuine issue of material fact is on the moving party. See ; ; . The party opposing a properly supported motion cannot rest upon the mere allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). Petitioners filed no response to Respondent's Motion for Partial Summary Judgment and failed to appear at the hearing on the motion. For purposes of ruling on Respondent's Motion for Partial Summary Judgment, the issues for decision are (1) whether petitioners are entitled to deduct the losses claimed on Schedule E in 1983, 1984, and 1985, with respect to the GD&L container program; (2) whether petitioners are entitled to *303 the investment tax credit claimed with respect to the containers in 1983; (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for the portions of the determined deficiencies attributable to the disallowed losses and credits claimed by petitioners for their GD&L investment; (4) whether petitioners are liable for additions to tax under section 6661 for the portions of the determined deficiencies attributable to the disallowed losses and credits claimed by petitioners for their GD&L investment; and (5) whether the portions of the deficiencies attributable to the losses and credits claimed with respect to the GD&L container program are attributable to a tax motivated transaction for purposes of section 6621(c). Petitioners stipulated that neither GD&L, Co-op, nor their agents and/or representatives leased containers in the name of petitioners and/or Economere, and neither petitioners nor Economere produced documents to show that the containers generated any income during the years in question. Petitioners further stipulated that they have not produced evidence to show that the containers they purportedly purchased in 1983 were ever placed in service. *304 During 1983, 1984 and 1985, petitioners claimed losses and credits attributable to the GD&L container program totaling $ 733,724. Petitioners' cash investment in the program was $ 52,500. Most of the purchase price upon which the losses and credits were claimed is based upon a purported loan from Co-op. Petitioners admitted that they signed no note or other document evidencing such indebtedness. The stipulated and admitted facts support respondent's determination that the losses and credits claimed with respect to the container program are not allowable. Petitioners have not set forth specific facts in support of their contention that they are entitled to the losses and investment tax credits they claimed, as required by Rule 121(d). We hold that respondent has shown that no genuine issue of material fact exists and that respondent is entitled to a decision as a matter of law with respect to the deficiencies attributable to petitioners' GD&L container transactions. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) *305 imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners have failed to produce credible evidence to support the substantial losses and credits they claimed with respect to the GD&L container program. Such losses and credits are based in large part on a purported loan from Co-op for which petitioners admit they signed no note or other document evidencing any indebtedness. Prior to investing in the GD&L program, petitioners had no experience in the marine dry cargo container leasing industry and relied on the promotional materials prepared by GD&L and Laurins for information about the investment. Petitioners allege in their petition that they are not liable for additions to tax because they relied upon competent tax advisers, but have offered no factual support for this contention. While there are situations where reliance on expert or professional advice may satisfy *306 the reasonable and prudent person standard, a taxpayer must establish that the person upon whom he or she relied is qualified to give the advice. This petitioners have failed to show. In sum, it must be established that the reliance was reasonable. , affd. , affd. . Petitioners admit that they relied in their investment decision on the advice of the purveyor of the program. Considering the size of petitioners' investment and the proportionately large tax write-offs, further investigation was mandated. , affg. . The record before us simply does not support a finding that petitioners relied on the advice of competent and unbiased parties. We cannot say that reliance on the advice of virtual strangers who promoted the program amounts to reasonable and prudent conduct. Such reliance is not the type of activity which will overcome the addition to tax *307 for negligence or intentional disregard of the rules or regulations. ; , affd. without published opinion , affd. sub nom. , affd. sub nom. , affd. without published opinion sub nom. . Accordingly, respondent's determinations with respect to the additions to tax for negligence are sustained. Section 6661 imposes an addition to tax equal to 25 percent of any underpayment of income tax attributable to a substantial understatement. An understatement is defined as the excess of the amount of tax required to be shown on the tax return over the amount of tax actually shown on the return as filed, reduced by any rebates. Sec. 6661(b)(2)(A). A substantial understatement is one that exceeds the greater of either 10 percent of the tax *308 required to be shown on the return or $ 5,000. Sec. 6661(b)(1). The amount of the understatement may be reduced by an amount for which there is substantial authority for the treatment adopted by petitioners on their return, or with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return, or in a statement attached to the return. Sec. 6661(b)(2)(B)(i) and (ii). The reduction for items adequately disclosed is not available in the case of any item attributable to a tax shelter. Sec. 6661(b)(2)(C)(i)(I). Further, the reduction for items for which there is substantial authority for the treatment on the return is not available in the case of a tax shelter unless, in addition to the other requirements of the subparagraph, the taxpayer reasonably believed that the claimed tax treatment was "more likely than not" the proper tax treatment. Sec. 6661(b)(2)(C)(i)(II). For this purpose, section 6661(b)(2)(C)(ii) defines a tax shelter as any partnership or other entity or investment plan or arrangement for the principal purpose of which is the avoidance or evasion of Federal income tax. On the basis of the stipulated facts and exhibits, *309 we conclude that the GD&L container program petitioners invested in was a tax shelter. [3] Although petitioners allege in their petition that they are not liable for the addition to tax under section 6661, they have not shown any specific facts from which we could determine that they reasonably believed that the tax treatment they claimed was more likely than not the proper tax treatment. Accordingly, we must sustain respondent's determination of the addition to tax under section 6661, provided that the Rule 155 computation reflects that petitioners' understatement of tax is in excess of the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). *310 Section 6621(c) provides for an interest rate of 120 percent of the adjusted rate established under section 6601 if there is a substantial underpayment (an underpayment which exceeds $ 1,000) in any taxable year attributable to one or more "tax motivated transactions". The increased interest rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. , affd. without published opinion . We conclude on the basis of the stipulated facts and petitioners' admissions that the GD&L container transactions were tax motivated transactions, and therefore hold that section 6621(c) is applicable. To reflect the foregoing and the stipulations of settlement pertaining to other issues, An order granting respondent's motion will be issued and decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due to the deficiency↩
2. 120 percent of the interest due to the defiency↩
2. We note that the Form 3468 attached to the unsigned partnership return in the record does not show a computation of investment tax credit containing only entries of unadjusted basis of recovery property in the amounts of $ 19,711 for 3-year new property and $ 1,045,000 for other new property.↩
3. We note that in , and , we concluded, as we do here, that the only purpose of the container program promoted by GD&L was the avoidance or evasion of Federal income tax, and that the program was a factual sham. Petitioners in the instant case have not shown that their GD&L transactions are distinguishable from those in Weiler and Shortal↩.